UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22217-CIV-WILLIAMS/REID

ZURU INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S *EX PARTE*
APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

    This cause is before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Motion for TRO"). [ECF No. 8]. This matter was referred to the Undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). [ECF No. 12]. Initially, Plaintiff Zuru Inc. ("Zuru" or "Plaintiff") moves for entry of a Temporary Restraining Order against Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Complaint, and an order restraining the financial accounts used by Defendants, pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

    The Court has carefully considered the Motion for TRO, the record, and the governing law. For the reasons stated below, it is **RECOMMENDED** that Plaintiff's Motion for TRO be **GRANTED**.

1

**BACKGROUND**

Plaintiff is the exclusive U.S. licensee of all rights in and to the BoB Marks (the "BoB Marks") described in the Declaration of Sherin Xu as follows:

| Mark | U.S. Reg. No. | IC | First Use/ First Use in Commerce | Registration Date | Exhibit |
|---|---|---|---|---|---|
| BUNCH O BALLOONS | 4709630 | 28 | 8/30/2014 | 3/24/2015 | 1A |
| BUNCHO | 6086014 | 28 | 8/30/2014 | 6/23/2020 | 1B |
| FILL AND TIE UP TO 100 WATER BALLOONS IN 60 SECONDS! | 4928737 | 28 | 1/15/2015 | 3/29/2016 | 1C |

*See* [ECF No. 8-1]. The BoB Marks are used in connection with the design, marketing, and distribution of children's toys and other consumer products. *See* [*Id.* at ¶ 15].

According to Plaintiff, Defendants, using various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the BoB Marks. *See* [*Id.* at ¶¶ 41-43].

Although Defendants may not copy and infringe each of the BoB Marks for each category of protected goods, Plaintiff has submitted evidence showing Defendants have infringed at least one of the BoB Marks. [ECF No. 11-2]. According to Plaintiffs, Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the BoB Marks. [ECF No. 8-1].

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's branded and protected products by Defendants. *See* [*Id.* at ¶ 52]. Plaintiff states they

have accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of the BoB Marks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. [*Id.* ¶ 60]. Plaintiff conducted a review and visually inspected the BoB Marks branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of Plaintiff's products. *See* [*Id.*].

## **LEGAL STANDARD**

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

## **DISCUSSION**

Based on the Declarations submitted in support of Plaintiff's Motion, the Court concludes that Plaintiff has a strong probability of proving at trial that the products Defendants are selling and promoting for sale contain unauthorized reproductions and derivatives of Plaintiff's trademarked works, that the infringement of the trademarked works will likely cause Plaintiff to suffer immediate and irreparable injury if a Temporary Restraining Order is not granted, and that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing unauthorized reproductions and derivatives of the trademarked works.

Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the BoB Marks, and; (2) that the products Defendants are selling and promoting for sale are copies of Plaintiff's products which bear copies of the BoB Marks.

Because of the infringement of the BoB Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. Plaintiff has demonstrated that both it and consumers will suffer immediate and irreparable loss, damage, and injury before Defendants can be heard in opposition unless its request for *ex parte* relief is granted.

Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights. There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace, and that consumers are likely to be misled, confused, and disappointed by the quality of these products. Under such a circumstance,

Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

There is also good cause to believe that if Plaintiff provides notice to Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting Plaintiff's ability to obtain meaningful relief.

Further, the balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of products if such relief is not issued. Additionally, the public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

As to the freezing of assets, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the BoB Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."

5

*Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Motion [ECF No. 8] be **GRANTED**, and a Temporary Restraining Order be entered against all entities included in Plaintiff's Attached Schedule A as follows:

## TEMPORARY RESTRAINING ORDER

(1)     Each of Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of Defendants having notice of this Order are temporarily restrained as follows:

a.     From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the BoB Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff;

b.     From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the BoB Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the BoB Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive

6

possession of, or owned, controlled, or held by, or subject to access by, any of Defendants, including, but not limited to, any assets held by or on behalf of any of Defendants; and

    c. From using any reproduction, counterfeit, copy, or colorable imitation of the BoB Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

 (2) Each of Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of Defendants having notice of this Order shall immediately discontinue the use of the BoB Marks, or confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

 (3) Each of Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

 (4) Upon receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for any of Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order,

    a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided

below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

        b.      Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) the identity and location of Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

(5)     Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6)     The Clerk of the Court is directed to issue a single original summons in the name of 'today and forever' and all other Defendants identified in Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(7)     This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the BoB Marks at issue in this action and/or unfairly competing with Plaintiff.

(8)     This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

**BOND TO BE POSTED**

Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff should be required to post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

**PRELIMINARY INJUNCTION**

If the District Judge adopts the recommendations made in this Report, a hearing will be set before this Court within fourteen days of the Order, at which time Defendants and/or any other affected person may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Further, the Court should require the following:

(1)     Once Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and any Order adopting this Report, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of

Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

(2)   Plaintiff should post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at www.sriplaw.com/notice.

(3)   Plaintiff should provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff should also continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at www.sriplaw.com/notice.by other means reasonably calculated to give notice which is permitted by the Court.

(4)   Defendants should be given five (5) business days to comply with this Temporary Restraining Order following notice.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Plaintiff has **THREE** (3) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.[1] *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507 (11th Cir. 1990). Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and

---

[1] Because this Report and Recommendation stems from an *ex parte* application, the Undersigned is shortening the normal objection period for Plaintiff, and Defendants will not have the opportunity to object to the Undersigned's recommendations because of the *ex parte* nature of a temporary restraining order.

legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 22nd day of June, 2023.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **United States District Judge Kathleen M. Williams;**

        **Counsel of Record**